### In re McLEAN-BOWMAN CO.

(District Court, M. D. Pennsylvania. June 6, 1905.)

No. 459.

BANKRUPTCY—DEBTS—CHARACTER—EVIDENCE.

> A corporation, prior to bankruptcy, issued $10,000 of its stock to one of its officers, to be by him pledged for a loan. Thereafter, in order to take up such loan, an application was made to claimant for a loan of an equal amount, which he made after examining the corporation's affairs, taking a note signed by the incorporators individually; both, however, intending that the debt should be that of the corporation. Thereafter the stock was reissued to claimant without his knowledge, until after he was solicited to transfer the same by his son for the benefit of the corporation, which he did. *Held*, that the transaction amounted to a loan for the corporation's benefit, and not to a purchase of the corporation's stock.

In Bankruptcy. On certificate from referee sur exceptions to proof of debt of Peter McLean.

C. H. Bergner, for exceptions.

W. M. Hargest, for Peter McLean.

ARCHBALD, District Judge. The right of the claimant to participate as a creditor of the bankrupt in the funds of the estate depends on the question whether the $10,000 which he advanced in July, 1902, was a loan to the company, as he alleges, or to the individual members of it whose note he took, or was a purchase of that much of its common stock, as is contended by the exceptants. This is not to be determined by the particular form in which the transaction was cast, although that is not to be entirely disregarded, but rather by the essential character of it, which, so far as the note which was taken at the time was concerned, may undoubtedly be shown without impinging upon the rule which prohibits the variation of a writing by parol except in the case of fraud, accident, or mistake; the claim not being on the note, as it is to be observed, but outside of it; the note being merely referred to by the claimant as a security which he held.

The immediate facts do not seem to be in any serious controversy, however much it may be otherwise as to the inferences to be drawn from them. The bankrupt corporation was organized in August, 1901, and conducted a large department store in the city of Harrisburg, Pa. Its authorized capital was $30,000, of which $20,000 was subscribed and paid in at the outstart; leaving 100 shares, or $10,000, which remained undisposed of until some time in November or December, 1901, when a certificate for it was issued to John A. Borland, one of the original incorporators. This $10,000 of stock, however, did not belong to Borland, but stood for a loan of that amount which was obtained on the strength of it by the McLean-Bowman Company from the Harrisburg Trust Company; the certificate being issued to Borland at the request of the trust company, so that its name might not appear in the transaction. After this loan had been carried for about a year, on July 22, 1902, the trust company pressed for payment, and, the Bowman-McLean Company not being in shape to respond, Mr. Boyer, one of the members, sought out the claimant, Peter McLean, who was in business at York, Pa., and solicited a loan of $10,000 for the company, whose affairs, as he stated, were prospering. Mr. McLean did not give an immediate answer, but the next day he came to Harrisburg, taking with him a certificate of deposit for the amount desired, made out to the order of the McLean-Bowman Company, and, after further discussion of the situation, turned this over to the company, and it was deposited to its credit. In order to secure this advance, a judgment note for $10,000, due one day after date, and stipulating for interest at the rate of 6 per cent. per annum, payable quarterly, was signed by Boyer, Bowman, Borland, and Robert McLean, the four existing members of the company, individually, and given to Peter McLean, the claimant. This completed the transaction for the time being. That it was understood and intended by all parties to be a loan to the company, pure and simple, I am fully persuaded. Peter McLean so testifies, and so, practically, do Borland, the president, and Bowman, the secretary and treasurer—both expressing surprise at finding themselves held for it personally by the judgment note which they had given—while Boyer and Robert Mc-

Lean, the others present, were not examined; not being able, as I understand it, to be reached. It is a fact, however, that on the same day the certificate of stock for $10,000, which had been issued to Borland for the benefit of the Harrisburg Trust Company, was taken up—the loan for which it was pledged having been paid with the money borrowed of the claimant—and a new certificate was issued in his name. It is claimed by him that this was done without his knowledge, and it is certain that the certificate was not delivered at the time, but remained in the safe of Robert McLean, his son, at Harrisburg, until a year and two months later, when, the McLean-Bowman Company being again in difficulty, and an effort being made by certain parties to extricate it, to do which a control of all the stock was deemed necessary, the certificate was taken to Peter McLean, at York, by Robert McLean, his son; and there, on September 7, 1903, at the latter's request, he indorsed it over, expressing surprise at its production.

Under all the circumstances, the right of the claimant to stand as a creditor of the bankrupt company must, in my judgment, be sustained. As already stated, this right depends upon the real nature of the transaction, rather than the forms by which it was attended. Or, to speak plainly, if it was in fact a loan of so much money to the bankrupt concern, it does not matter that the individual note of the members was taken, or that a certificate of stock for the amount of it was contemporaneously issued to the claimant. These things are, no doubt, to be considered in determining its character, but they are by no means controlling. The issuing of this same block of stock to Borland to secure the Harrisburg Trust Company for the loan which Mr. McLean's money paid off did not differ materially from the arrangement by which it is now sought to make him out a stockholder; and yet, as that was unquestionably a loan, there is no reason why this should not be also. Nor does it affect its character that the members who solicited the money gave their individual note to secure it, instead of that of the company. No doubt, they thus became personally liable, but there was nothing unusual in their assuming such liability considering their interest; nor did it necessarily relieve the company from the obligation for it, if that was the real understanding. As bearing upon this, it is to be noted that the money was directly solicited for the company, its affairs were discussed, and the assurance given that it was prospering. Moreover, the certificate of deposit procured by Mr. McLean from the bank at York before he started for Harrisburg, where the transaction was consummated, was made out to the company; showing with whom he supposed he was dealing. On the other hand, it is most remarkable, if the $10,000 advanced was intended to pay for so much stock, that nothing whatever was said about it by anybody, as seems to have been the case, and that a certificate for it was not delivered or asked for. Still more remarkable is it that a note should have been taken, on which interest was stipulated to be paid, and was paid, quarterly, not by the parties who signed it, but by the company. All things considered, the only consistent and reasonable conclusion to be drawn is that

the money was a loan to the company, the note being either intended as additional security, or being put in the form that it was by mistake—the parties confessedly having very little business experience—and the stock being added as collateral, to be held as it had been previously by the Harrisburg Trust Company. That the claimant ever intended to become, or in fact was, a holder of this stock, I am not persuaded. He was the holder of $8,000 of preferred stock, but that is another matter.

The objections are overruled, and the claim is allowed as proved.